UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JORDAN M. FRANKS,

    Plaintiff,

  v.                                                        Case No. 19-CV-1299

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

## DECISION AND ORDER

Jordan M. Franks seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claims for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On November 19, 2015, Franks filed applications for a period of disability and disability insurance benefits and for supplemental security income, alleging disability beginning September 24, 2013 (Tr. 16) due to herpes simplex–type 2, attention deficit disorder ("ADD"), opiate addiction, depression, and anxiety (Tr. 296). Franks' applications were denied initially and upon reconsideration. (Tr. 16.) Franks filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on June 11, 2018. (Tr. 45–99.) Franks testified at the hearing, as did Rebecca Hill, a vocational expert ("VE"). (Tr. 45.)

In a written decision issued October 12, 2018, the ALJ found that Franks had the severe impairments of depression, anxiety, and attention deficit hyperactivity disorder ("ADHD") (Tr. 19.) The ALJ further found that Franks did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 20–21.) The ALJ found that Franks had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: limited to simple, routine, and repetitive tasks, but not at a production-rate pace (e.g., assembly line work); limited to simple work-related decisions; and limited to frequent interaction with supervisors and occasional interaction with co-workers and the public. (Tr. 21–22.)

The ALJ found that Franks was capable of performing his past relevant work as a construction laborer and agricultural sorter. (Tr. 26.) Alternatively, the ALJ found that given Franks' age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 27–28.) As such, the ALJ found that Franks was not disabled from his alleged onset date until the date of the decision. (Tr. 28.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Franks' request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Franks argues the ALJ erred in assessing his mental health impairments. First, Franks argues the ALJ failed to properly incorporate into his RFC all of the state agency psychologists' Section I findings on the mental residual functional capacity form, contrary to Seventh Circuit precedent. Second, Franks argues the ALJ failed to adequately account for the limitations opined by consultative examiner, Dr. Steven Krawiec. Finally, Franks argues the ALJ erred in the weight assigned two of his treating providers, Dr. Fred Groos and Randall Ambrosius, LCSW. (Pl.'s Br. at 18, Docket # 14.) I will address each argument in turn.

### 2.1 Mental RFC Assessment

Again, Franks argues the ALJ failed to properly incorporate all of the state agency psychologists' Section I findings on the mental residual functional capacity form into his RFC. At step two of the five-step sequential analysis, the ALJ must determine whether a claimant's impairments are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In determining the severity of a claimant's mental impairments at step two and whether the claimant meets a listing at step three, the ALJ addresses the claimant's degree of functional limitation in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The Seventh Circuit has stated that the ALJ must then "incorporate" these limitations into the hypothetical questions posed to the VE at step five. *See O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (finding that the ALJ erred when his hypothetical question to the VE failed to take into account his finding at step two that the claimant had deficiencies in social functioning and concentration, persistence, and pace). Stated more broadly, "to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003).

In this case, at the initial level, state agency psychologist Beth Jennings, Ph.D opined that Franks had moderate limitations in the "paragraph B" criteria of difficulties in maintaining concentration, persistence, or pace. (Tr. 107.) In the Mental RFC Assessment Form, in the Section I findings, Dr. Jennings further opined that Franks was moderately limited in the ability to carry out detailed instructions and to work in coordination with or in proximity to others without being distracted by them. (Tr. 110.) At the reconsideration level,

4

state agency psychologist Lisa Fitzpatrick, PsyD, concurred with Dr. Jennings' findings. (Tr. 140–41.) The ALJ assigned great weight to the opinions of Drs. Jennings and Fitzpatrick, finding the opinions consistent with the medical evidence of record. (Tr. 25.) The ALJ explained that the medical record documents Franks' depression, anxiety, and ADHD and that he was accommodating Franks' moderate limitations in interacting with others and with concentration, persistence, or pace through the stated RFC. (Tr. 23.)

Franks acknowledges that the RFC limitations and the corresponding hypothetical question posed to the VE "seem to address" Drs. Jennings and Fitzpatrick's limitations. (Pl.'s Br. at 19.) Franks, however, invokes the common argument that pursuant to Seventh Circuit precedent, an ALJ must account for all limitations found in Section I of the MRFCA form, or remand is warranted. (*Id.* at 18.) To be sure, as Judge Griesbach aptly explained:

> It is now abundantly clear that under the law of this circuit, the ALJ must include in the RFC, and in the corresponding hypothetical question to the VE, all of the limitations the ALJ finds in the paragraph B criteria at steps 2 and 3 of the sequential evaluation, as well as those in the "summary conclusions" or "worksheet" section of the MRFCA form. It is also clear that under the law of this circuit, "moderately limited" means more than some impairment. Exactly what more it means is unclear. While the ALJ's attempt to translate such a limitation into job-related restrictions that fits within a VE's terminology is understandable, doing so risks likely appeal and almost certain reversal.

*Hoeppner v. Berryhill*, 399 F. Supp. 3d 771, 778 (E.D. Wis. 2019). Again, the state agency psychologists found moderate limitations in two areas of sustained concentration and persistence: the ability to carry out detailed instruction and the ability to work in coordination with or in proximity to others without being distracted by them. (Tr. 110, 140.) The ALJ limited Franks to simple, routine, repetitive tasks, but not at a production-rate pace (e.g., assembly line work), and to simple work-related decisions. (Tr. 21–22.) He also limited Franks to only occasional interaction with co-workers and the public. (Tr. 22.) In *DeCamp v. Berryhill*,

5

916 F.3d 671 (7th Cir. 2019), however, the Seventh Circuit found that while an ALJ "need not use 'specific terminology,'" the court has "'repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *Id.* at 676 (quoting *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)); *see also Mischler v. Berryhill*, 766 F. App'x 369, 376 (7th Cir. 2019) (finding that while a "task can be simple," a person "with a poor attention span may still become distracted and stop working"). Thus, as Judge Griesbach found in *Hoeppner*, given the Seventh Circuit's precedent, reversal is warranted for the ALJ to properly formulate Franks' RFC and corresponding hypothetical to the VE to account for Franks' moderate limitations in concentration, persistent, or pace.

As to the "paragraph B" criteria of social functioning, while Dr. Jennings (Tr. 107) opined that Franks had mild limitations and Dr. Fitzpatrick found that he had moderate limitations (Tr. 136), both agreed that Franks was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors (Tr. 110, 141). Again, the ALJ assigned great weight to their opinions, and limited Franks to frequent interaction with supervisors. (Tr. 23.) The ALJ did not properly account for Franks' moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors. In finding Franks moderately limited in this area, Dr. Jennings specifically considered in her narrative assessment Franks' statement that he gets fired shortly after he is hired because of his difficulty getting along with others, especially in taking or following instructions from his boss (Tr. 110–11). While the ALJ limited Franks to frequent interaction with supervisors, this limitation addresses the quantity, not the quality of Franks' interaction with a supervisor. *See*

6

*Wartak v. Colvin*, No. 2:14-CV-401-PRC, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016) (finding that handling instruction and criticism from supervisors goes to the quality of the contact, and limitations such as "occasional contact" addresses the quantity of time spent with the individuals, whereas "superficial contact" addresses the quality of the interactions). In sum, remand is warranted to re-evaluate Franks' Mental RFC.

        2.2        Weight Given to Treating and Examining Providers

Although the inadequacy of the ALJ's RFC and corresponding hypothetical questions is sufficient to warrant reversal, I will briefly address Franks' remaining arguments that the ALJ assigned insufficient weight to the treating source statements of Dr. Groos and Ambrosius and the consultative examination by Dr. Krawiec. An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2).[1] If the opinion of a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] record," the opinion must be given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, she may not simply reject it. Social Security Ruling ("SSR") 96-2p. Rather, if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, she must evaluate the opinion's weight by considering a variety of factors, including the length, nature, and extent of the claimant and the source's treatment relationship; the degree to which the opinion is supported by the

---

[1] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 Fed. Reg. 5844). The final rules became effective on March 27, 2017. For claims (like the one at issue here) filed before March 27, 2017, the SSA continues to apply the rules that were in effect at the time of the ALJ's decision. *See* 20 C.F.R. § 404.1527.

evidence; the opinion's consistency with the record as a whole; and whether the source is a specialist. *See* 20 C.F.R. § 404.1527(c).

The ALJ must always give "good reasons" for the weight given to a treating physician's opinion. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. "An ALJ can reject [a treating source's] opinion only for reasons supported by substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citing *Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir. 2002)).

Franks treated with Dr. Groos, a family practice doctor, briefly, at the very end of the relevant time period—from January 2018 until June 2018. Despite specifically stating that he believed it was important for Franks to work (Tr. 1053) and consistently reporting relatively normal medical findings (Tr. 1032–40, 1044–45, 1056–60, 1122–23), Dr. Groos opined that Franks was unable to work full-time and would need unscheduled breaks every two hours for 5 to 10 minutes. (Tr. 1069.) Similarly, Franks treated briefly with counselor Ambrosius from January 2018 until March 2018. During this time period, Ambrosius' records consistently showed good participation in the group therapy sessions and no signs of severe depression or anxiety (Tr. 1041, 1062–67), with only a single treatment record noting distractibility, disorganized thought, and fair insight/judgment (Tr. 1056). Ambrosius opined, however, that Franks met two listings, specifically finding he had marked restrictions in activities of daily living and maintaining social functioning; extreme limitations in concentration, persistence, or pace; and one or two episodes of decompensation. (Tr. 1250–60.) Dr. Groos joined in Ambrosius' assessment. (Tr. 1262.)

8

Case 1:19-cv-01299-NJ    Filed 09/16/20    Page 8 of 11    Document 21

The ALJ assigned little weight to the opinions of Drs. Groos and Ambrosius, finding the opinions inconsistent with the medical evidence and their own treatment notes. (Tr. 25–26.) The ALJ's assessment is generous. These providers' opinions are not just inconsistent with the medical records, they are wildly inconsistent, having little to no support in the record. Even Franks acknowledges that "[a]dmittedly, given the limitations with the medical record, controlling weight for Dr. Goos [sic] and Mr. Ambrosius would not be merited." (Pl.'s Br. at 25.) Franks argues, however, that the ALJ still should have "consider[ed] the Goos/Ambrosius [sic] opinions for consistency of the record as a whole." (*Id.* at 26.) It is surprising that Franks would challenge the ALJ's opinion in this way. Not only did the ALJ properly weigh these opinions, further scrutiny of these opinions only serves to weaken Franks' case. The ALJ did not err in this regard.

Finally, Franks argues the ALJ erred in assessing the opinion of consultative examiner, Dr. Krawiec. Dr. Krawiec examined Franks on February 9, 2016. (Tr. 403.) Dr. Krawiec opined that Franks had major depressive disorder, social anxiety disorder, and ADHD. (Tr. 406.) Dr. Krawiec stated that these mental health difficulties "certainly could interfere with him persisting at tasks and maintaining adequate pace" and that ADHD "conceivably could interfere with him following through on even simple job instructions." (*Id.*) Although the ALJ generally gave Dr. Krawiec's opinion great weight, he assigned no weight to the portion of the opinion where he found the ADHD would interfere with Franks following through on even simple job instructions because there was no record evidence to support the finding and because it was based on Franks' own report. (Tr. 25.) Although Franks argues the ALJ rejected these findings on "questionable grounds," (Pl.'s Br. at 23–25), Franks has not shown the ALJ erred in this regard. Rather than basing his opinion on his own observations of

9

Franks, Dr. Krawiec seems to principally rely on Franks' general diagnosis of ADHD to find that *perhaps* his persistence, pace, and ability to follow through on even simple job instructions could be affected. (*See* Tr. 406 (stating the ADHD "*conceivably could*" interfere and "*certainly could*" interfere).) Thus, the ALJ did not err in his assessment of Dr. Krawiec's opinion.

## CONCLUSION

The ALJ's opinion in this case is generally well supported by the record. However, Franks' case falls into the trap of *DeCamp*. Although the SSA's own Program Operations Manual System explains that the Section I findings on the mental residual functional capacity form does not constitute an RFC assessment, *Hoeppner*, 399 F. Supp. 3d at 777 (citing POMS, DI 24510.060 (July 2, 2018), https://secure.ssa.gov/poms.nsf/lnx/0424510060), the Seventh Circuit has determined that these findings must be included in the RFC, *id.* at 778. Judge Griesbach's statement in *Hoeppner* bears repeating in the hope that the SSA will take notice:

> Absent reconsideration by that court or further review in the Supreme Court, the need for the SSA to change its forms and instructions to its adjudicators is obvious. To continue on this path without such changes will continue to result in reversals at a rate that will only increase the delays in and costs of adjudication.

*Id.* at 779. The Commissioner would also be wise to consider carefully whether an ALJ's decision can properly be defended in light of the Seventh Circuit precedent when choosing which cases to further litigate as opposed to agreeing to remand. For these reasons, despite the ALJ's proper evaluation of the opinions of Drs. Groos and Krawiec and Ambrosius, remand is required for the ALJ to properly consider the Section I findings on the mental residual functional capacity form in determining Franks' RFC.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of September, 2020.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge